JOHN M. BURKE *vs.* NEGRO JOE.—*June,* 1834.

A negro in this State is presumed to be a slave; and on a petition for freedom, must prove his descent from a free ancestor, or that he has been manumitted by deed or will.

Deeds and patents though directed by law to be recorded within a limited time, and to have no legal effect unless such requisitions are complied with, yet to quiet possession, the court upon a proper foundation being laid for it, will direct the jury to presume the existence of such papers, and that all legal requisitions had been complied with to give them effect.

Deeds of manumission are not exceptions to the general rule.

The presumption of a deed to give freedom, must be founded on acts inconsistent with a state of slavery, *known to the owner,* and which can only be rationally accounted for, upon a supposition that he had intended to free his slave.

When the exercise of apparent freedom is without the knowledge of the owner of a slave, or where the owner died soon after the slave commenced to act as free, and no administration had been taken out, no presumption of freedom can be drawn.

Circumstances under which a jury may presume a deed of manumission stated.

All cases of presumption may be rebutted or explained, and if the foundation of fact upon which the presumption is claimed does not exist, the presumption must fail.

The law construes no act to be tortious but from necessity.

APPEAL from *Anne Arundel* county court.

The appellee in this case, filed his petition for freedom on the 6th of July, 1832, against the appellant.

1. At the trial the petitioner gave evidence to the jury, by legal and competent witnesses, without objection on the part of the defendant, that about the year 1784, negro *Dinah* the grand-mother of the petitioner, and negro *Lavy* or *Lavinia,* the mother of the petitioner, and the only child of said *Dinah,* were the slaves of a certain *William Mackubin.* That in the year 1797, the said *Dinah* and *Lavy,* were going at large as free-women, living, acting, and passing in all respects as such, in the neighborhood of the said *William,* and within three miles of his residence, and with his knowledge, and many other such acts; renting small tenements, owning property, contracting debts, being distrained on for rent, and supporting themselves and children; and they so continued acting and living, in the free and undisturbed possession of their liberty, from that time until the death of the said *William Mackubin,* in or about the month of May, 1805. That the said *William Mackubin,* by his last will and testament, devised and bequeathed all his property, real and personal, to his wife *Elizabeth* for life, remainder to his children. That the said *Elizabeth* obtained letters of administration, with the will annexed, of the said personal estate of the said *William,* gave bond for the payment of all debts, and legacies, took possession of the property of said *William,* and settled up his estate. That the said *Elizabeth* died in the year 1824, and from the death of the said *William* until her death, she never set up any claim to the said *Dinah* and *Lavy,* or any of their issue, or attempted to hinder or molest them, or any of them in the enjoyment of their freedom, although they all lived during the whole of that time in the neighborhood of the said *Elizabeth,* within the aforesaid distance from her residence, and frequently nearer, acting as free persons as aforesaid, with her knowledge, and although some of them

were frequently at the place of her residence, acting as free persons there. That immediately after the death of the said *Elizabeth,* the children of the said *Elizabeth* and *William,* and tenants in remainder of the property of the said *William,* took possession thereof, and of the property of said *Elizabeth,* sold it, paid the debts of said *Elizabeth,* and divided the residue among themselves. That none of the said children set up any claim or title to the said *Lavy* or her issue, or to any of the issue of the said *Dinah,* (she having died in the life-time of the said *Elizabeth,*) or hindered, or molested them, or any of them, in the enjoyment of their freedom, although they lived and acted as aforesaid, in the neigbourhood of the said children, within about the aforesaid distance, and with their knowledge, in the undisturbed enjoyment of their freedom until the month of June, 1832, when the defendant, who is one of the heirs and personal representatives of said *William* and *Elizabeth,* took out letters of administration *de bonis non,* on the estate of the said *William,* and letters of administration on the estate of the said *Elizabeth,* and seized and took possession of the petitioner, and all the issue of the said *Dinah* and *Lavy,* claiming them as slaves for life.

The petitioner further proved, that the said *William Mackubin,* was until his death a hearty and active man, superintending his farm and transacting his own affairs, frequently walking to places in the neighborhood more than three miles distant from his residence. That during the life of said *Elizabeth,* some of the issue of said *Lavy* and *Dinah,* and *Lavy* herself, were frequently at the place where she resided, and were sometimes hired by the family in which she lived, and received wages as free persons; and that neither the said *William,* during his life-time, after the year 1797, until his death, nor the said *Elizabeth* after his death, nor any of their children after her death, until the year 1832, ever set up any claim to any of them, but treated them as free persons. That the said *Dinah* and *Lavy* had numerous issue who are now living. That at

the time the said negroes commenced acting and living as free persons as aforesaid, they were of healthy constitutions, and capable by labor to procure to themselves sufficient food and raiment, with the other requisite necessaries of life, and under the age of forty-five years, and able to maintain themselves and so continued.

Upon this evidence the defendant prayed the court to instruct the jury, that they ought not to presume that the said *Dinah* was legally manumitted by the said *William Mackubin* in his life-time.

But the court (DORSEY, Ch. J., and KILGOUR, WILKINSON, A. J.) refused the prayer and instructed the jury, that from the evidence aforesaid (if they believed it) they might presume that the said *Dinah* was legally manumitted by the said *William Mackubin.* The defendant excepted, and the verdict and judgment being against him, he prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J., and MARTIN, STEPHEN, and ARCHER, J.

*Alexander*, for the appellant.

It is admitted by the counsel for the appellant, that the enjoyment of freedom for the period proved, under the circumstances of notice and assent proved, will warrant the presumption that the ancestor of the petitioner was legally manumitted by *William Mackubin* in his life-time, if such presumption can legally be made from the enjoyment of freedom for any space of time, and under any circumstances of notice and acquiescence whatever; but he insisted that a negro once a slave, can make out his right to freedom against his former master, only by showing a manumission by deed, or last will and testament made according to the acts of Assembly in such cases provided. 5 *Harr. and Johns.* 190. 1 *Phil. Ev.* 126.

The going at large of these negroes originally was a violation of the law, and a right thus commencing is not per-

fected by length of enjoyment. 2 *Con. Rep.* 620. *Act 1715, ch.* 44; 1787, *ch.* 33. 2 *Harr. and Johns.* 176. 3 *Stark. Ev.* 1215. 7 *Wheat.* 102. 2 *Con. Rep.* 615. *Act 1827, ch.* 112, *sec.* 34; 1796, *ch.* 67; 1752, *ch.* 1.

*Brewer* and *Randall,* for the appellee.

A deed of manumission may be, and ought to be presumed by the jury, when the testimony adduced establishes a sufficient ground for such a presumption.

The doctrine of presumptions is universal, embracing every fact which it may be required to prove, and this case does not constitute an exception. 3 *Stark. Ev.* 1254. 10 *Serg. and Rawl.* 391. 6 *Harr. and Johns.* 351, 144. 3 *Harr. and McHen.* 103. 1 *Harr. and Johns.* 172. 2 *Gill. and Johns.* 114. 7 *Wheat.* 109. 12 *Mass. Rep.* 400. 7 *Wheat.* 355. 7 *Cranch.* 290. 12 *Wheat.* 590. 6 *Munf.* 159. 5 *Harr. and Johns.* 190.

The act of 1752, *ch.* 1, shows by its preamble, that the right of manumission was previously exercised, and the act instead of conferring, was restrictive of it.

The case of *Hall vs. Mullin,* 5 *Harr. and Johns.* 190, proves, that freedom may be conferred without an express grant by deed or will; and it would seem therefore to follow, that it may be inferred from circumstances, inconsistent with any other than a condition of freedom. 2 *Pick. Rep.* 245.

The permitting of the ancestors of these negroes to go at large as free persons without manumission, would have been culpable on the part of their former owner, and as the law always presumes that to be done, the omission of which is culpable, the manumission will be presumed. 19 *Johns. Rep.* 145. 2 *Barn. and Ald.* 386.

The presumption of freedom in this case, rests upon a variety of independent facts, any one of which is a sufficient foundation for the inference we would deduce from them. It stands therefore upon much stronger ground than would a presumption resting on a *dependent* train of circumstances,

where the falsehood of one, would necessarily infer the falsehood of the whole. 1 *Phil. Ev.* 117.

It has been said that no right can be based upon an original violation of the law. But this assumes the very matter in controversy, which is, whether there was or was not a grant of the right of freedom.

Martin, J., delivered the opinion of the court.

A negro in this State is presumed to be a slave, and on an application for freedom, must prove he is descended from a free ancestor, or that he has been manumitted by deed or will.

It is not pretended in this case that the petitioner is descended from a free ancestor, nor has a deed of manumission or will been produced, but it is contended from the facts disclosed in evidence, a deed of manumission ought to be presumed, and that would entitle him to his freedom.

Although this case has received an ingenious and elaborate investigation by the counsel engaged in it, it would seem to be embraced within a very narrow compass.

The inquiry is, whether in any case or under any circumstances, a jury may be directed to presume a *deed of manumission*, and if so, whether the facts proved in this case, would justify such presumption?

The general doctrine of presumption as applied to patents, deeds, &c. is too well established now to require an examination. Although directed by law to be recorded within a limited time, and to have no legal effect unless such requisitions are complied with, yet to quiet possession, the courts, upon a proper foundation being laid for it, will direct the jury to presume the existence of such papers, and that all legal requisitions had been complied with to give them effect. Can any reasonable suggestion be made, why deeds of manumission should be exempt from this law of presumption? That every other paper required by law to be recorded, may under circumstances be presumed, but that a deed of manumission alone, although standing upon

the same principles should form an exception to the rule? No authority has been produced to shew such an exception, and we think none exists.

The presumption of a deed to give freedom, must be founded upon acts inconsistent with a state of slavery, known to the owner, and which can only be rationally accounted for, upon a supposition that he had intended to free his slave.

A negro going at large and acting as free for any length of time, will not *per se* be a sufficient foundation to presume a deed, because he might be in that situation without the knowledge of his owner, or there might be no person legally authorised to claim him.   If this exercise of apparent freedom was without the knowledge of the owner, no supposed acquiescence by him could be deduced from it, nor could the assent be presumed, where the owner, at the time the acting as free commenced, soon after died, and no administration was taken out on his estate.

If those presumptions be correct, it must be admitted, the case before us is of the strongest character to justify the presumption.

The grand-mother and mother of this petitioner, were the slaves of *William Mackubin,* and they and their descendants have been at large acting as free, from the year 1797, to 1832.   They were permitted to own property, contract debts, rent farms, and support themselves and children until the death of *Mr. Mackubin,* in 1805, *living during that time, within three miles of his residence.*   By his last will and testament, he bequeathed all his property to his wife for life, remainder to his children.   She administered, and took possession of his property, settled up the estate, and died in 1824.   After her death, the children of *William Mackubin,* who were tenants in remainder of his property, took possession of it, and of the property of *Elizabeth Mackubin,* sold it, paid the debts of *Elizabeth,* and divided the residue among them.   They all knew *Dinah* and *Lavinia* had been the slaves of *William Mackubin,*

and that they had for many years acted as free, yet no claim was set up to them, but they were permitted to enjoy unmolested their freedom.

It has been contended, that this testimony although at first it appears irresistible, does not afford a sufficient foundation to presume a deed, because the negroes going at large may have been a violation of the act of 1787, *ch.* 33, by which it is enacted "that any person who shall permit or authorise any slave belonging to him or herself, in his or her own right, or possessed in the right of another, to go at large, or hire him or herself within this state, shall incur the penalty of five pounds current money per month, except ten days at harvest," and that so far from justifying the presumption of a deed, it subjected *Mr. Mackubin* to a prosecution.

It cannot be doubted, that all cases of presumption may be rebutted or explained, and if you can prove by facts the foundation on which the presumption is claimed did not exist, it must fail. In this case, the exercise of freedom by going at large, &c. may have had a lawful commencement, or it may have been an offence under the act of 1787, which would subject the owner to a prosecution. In the absence of all testimony to show it was without right it will be deemed lawful, for the law will never construe an act tortuous, unless from necessity. It will consider the act lawful, the commencement and contrivance of which is *not proved* to be wrongful. 7 *Wheat.* 107.

So far from there being evidence in this case to prove the going at large was a violation of the law, the contrary may be fairly presumed from it. By the act of 1787, every person permitting their negroes to go at large, is subject to a prosecution. *Dinah* and *Lavinia* are admitted to have been the slaves of *William Mackubin* in 1797. They were permitted to go at large to the time of his death, eight years; and yet we hear of no prosecution against him for a violation of this act. After his death, his widow permitting them to go at large, became amenable to this law. She

lived until 1824, yet no prosecution is exhibited against her, nor against the representatives in remainder, who after her death still allowed them to go at large and act as free.

JUDGMENT AFFIRMED.